UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JOHNNY L. MCGOWAN, JR.          )
                               )
       *Plaintiff,*             )
                               )
v.                             )          No. 1:05-cv-334
                               )          *Collier*
STEVE CANTRELL, CPL. ROSCOE BYRD,  )
CPL. KEVIN PEDDICORD, PETER    )
RICHARD HALL, SANDRA 'SANDY' HALL,)
SGT. STEVE POTTER, WARDEN JACK )
MORGAN, DEPUTY WARDEN JAMES R. )
WORTHINGTON, ROBERT WALLS, CPL. )
DENISE HALL, MATTHEW HAYES, PAUL )
FLANDERS, CPL. ROGER BROWN,     )
RICHARD WILLIAMS, KENNY KNIGHT, )
CPL. A. STANLEY, TEDDY BLASLER,  )
ANITA GARRETT, OFFICER FNU HARBIN, )
CPL. ROBERT GIBSON, JR., DEREK  )
DAUGHERTY, LARRY BROWN, CPL.    )
JOHN DOE, SHARON HOUSTON, LARRY )
ASHBURN, CPL. DOUG COOK, FAYE   )
JEFFERS, ROLAND D. COLSON, JIM  )
BROWN, ALLEN CRAIG WILLIAMS,    )
DIANE GILMORE, all in defendants are sued )
in their individual and official capacities; and )
BRUSHY MOUNTAIN PRISON          )
EMPLOYEES UNION,[1]             )
                               )
       *Defendants.*           )

# MEMORANDUM

This *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 was previously

dismissed without prejudice under 42 U.S.C. § 1997(e) for failure to exhaust administrative

remedies (Court File Nos. 12 & 13). Plaintiff Johnny L. McGowan, Jr. ("McGowan") successfully

---

[1]     The Union identifies itself as the American Federation of State, County, and
Municipal Employees, AFL-CIO Local 2173. For purposes of this memorandum, Brushy Mountain
Prison Employees Union, American Federation of State, County, and Municipal Employees, AFL-
CIO Local 2173, and the Union all refer to the same defendant.

appealed and his case has been remanded by the United States Court of Appeals for the Sixth Circuit for further consideration in light of the Supreme Court's recent decision in *Jones v. Bock*, 127 S.Ct. 910 (2007), wherein the Supreme Court overruled a number of rules interpreting the requirements of §1997(e) which had been espoused by the Sixth Circuit. The Court required McGowan to redraft his complaint before allowing service.

McGowan redrafted his complaint, pursuant to the Court's directive and the parties submitted a number of motions– six by defendants and seven by the plaintiff. The following motions are before the Court: a motion to dismiss filed by defendant Brushy Mountain Prison Employees Union/American Federation of State, County, and Municipal Employees, AFL-CIO Local 2173 ("Union") (Court File No. 65) and the Union's motion for an extension of time in which to reply to plaintiff's response to their motion to dismiss (Court File No. 124); four defense motions requesting extensions of time in which to respond to the complaint (Court File Nos. 115-119); plaintiff's motions for home addresses (Court File No. 120), an extension of time in which to respond to the motion to dismiss (Court File No. 121),[2] to show cause (Court File No. 123), to ascertain status of pending motions (Court File No. 128); for last-known addresses (Court File No. 134),for default judgment (Court File No. 135); and to strike response (Court File No. 137).

Upon review of the record before the Court and screening the complaint pursuant to 28 U.S.C. § 1915(e), the Court concludes the Union's dispositive motion shall be **GRANTED** and plaintiff's complaint shall be **DISMISSED** in its entirety for the reasons explained below.

---

[2] The Court considered plaintiff's response to the motion to dismiss (Court File No. 125-126) wherein he conceded "to the defendants' allegations relative to the presented [R]ico claims" but objected to the defendants allegations relative to the § 1983 claims.

2

## I.    Non-Dispositive Motions

Accordingly, since the complaint will be dismissed in its entirety, the motions requesting an extension of time (Court File Nos. 115-119; 121; 124); the motions requesting home addresses and last known addresses (Court file No. 120 & 134); the motion to show cause (Court File No. 123); motion to ascertain status of pending motions (Court File No. 128);  the motion for default judgment (Court File No. 135)[3]; and the motion to strike (Court File No. 139) will all be **DENIED** as **MOOT**.

## II.    Standard of Review

### A.    *Pro Se* Pleadings

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law.  *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*,  660 F.2d 592, 593 (5th Cir. 1981).  *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995).  Although the standard of review is liberal, it does

---

[3]    Plaintiff contends defendants Cpl. A. Stanley, Cpl. John Doe, and Cpl. Denise Hall failed to file a response.  However, in the first amended Answer, defendant Denise Hall is listed as a defendant.  Nevertheless, plaintiff's complaint is being dismissed for failing to state a claim upon which relief may be granted.

require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 726 (citations omitted).

The Court initially screens the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). However, Title 28 U.S.C. § 1915(e)(2) provides the Court must dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted. Therefore, the Court will re-screen the complaint under 28 U.S.C. § 1915(e)(2) after analyzing the Union's motion to dismiss (Court File No 65).

**B.     Screening Pursuant to 28 U.S.C. §§ 1915A and 1915(e)**

When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is

4

applicable throughout the entire litigation process. A case that may not initially appear to meet §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under §1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)- (2). See *In re Tyler*, 110 F.3d [528,] 529-30 [8th Cir. 1997]. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

### C.      Standard of Review-Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true..." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Haines v. Kerner*, 404 U.S. 519 (1972); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996).

In order to preclude dismissal under Rule 12(b)(6), a complaint must contain either direct

or inferential allegations which comprise all of the essential, material elements necessary to sustain a claim for relief under some viable legal theory. *Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 406 (6th Cir. 1998); *Columbia Natural Resources*, 58 F.3d at 1109; *Allard v. Weitzman* (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993); *Scheid v. Fanny Farmer Candy Shops*, *Inc*., 859 F.2d 434, 436 (6th Cir. 1988). However, pursuant to the United States Supreme Court's recent clarification of the legal standard for evaluating motions to dismiss in *Bell Atlanta Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955 (2007), a complaint must contain sufficient facts "to state a claim for relief that is plausible on its face." The Supreme Court abrogated the often-cited rule established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)--that motions to dismiss may be granted only if a plaintiff can prove "no set of facts . . . which would entitle him to relief," finding that "this famous observation has earned its retirement. The phase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. The Court explained that the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" in order to avoid dismissal under Rule 12(b)(6). *Id*. at 1965. This clarification does not require a heightened fact pleading of specifics, but rather, requires "*enough facts* to state a claim" demonstrating the claim is plausible rather than just speculative or conceivable. *Id.* at 1974 (emphasis added).

The Sixth Circuit has not yet applied the *Twombly* standard to a motion to dismiss. In *Weisbarth v. Geauga Park Dist.*, ___ F.3d ___, 2007 WL 2403659 (6th Cir. Aug. 24, 2007), the Sixth Circuit, observed there was uncertainty as to the intended scope of the *Twombly* decision ("particularly regarding its reach beyond the antitrust context") but declined to resolve the scope of

the *Twombly* decision, finding that its "disposition of Weisbarth's claim does not depend upon the nuances of *Twombly's* effect on the dismissal standard." *Id.* at *3. The First, Second, Third, Seventh, and Tenth Circuits have all cited *Twombly* while applying the Rule 12(b)(6) standard and so have several District Courts in the Sixth Circuit. The Court finds the analysis in *Reid v. Purkey*, 2007 WL 1703526 (E.D. Tenn. 2007) persuasive. The *Reid* court explained "[w]hile a complaint need not contain detained factual allegations, a pleader has a duty to provide the grounds upon which a particular claim rests under Rule 8 of the Federal Rules of Civil Procedure, and this duty compels him to supply, at a minimum, the necessary facts and grounds which will support his right to relief. *Id.* at 1964-65. After this obligation has been fulfilled, a claim may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.*, at 1969."

The Court is required to construe the complaint in the light most favorable to the plaintiff and to accept all well-pleaded allegations of fact as being true. *Scheur v. Rhodes*, 416 U.S. 232 (1974); *Columbia Natural Resources*, 58 F.3d at 1109; *Mayer*, 988 F.2d at 638; *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). When a factual allegation is capable of more than one reasonable inference, it must be construed in the plaintiff's favor. *Saglioccolo*, 112 F.3d at 228; *Columbia Natural Resources*, 58 F.3d at 1109. The Court may not grant a Rule 12(b)(6) motion to dismiss simply because the Court does not believe the allegations of fact in the complaint. *Saglioccolo*, 112 F.3d at 228-29; *Columbia Natural Resources*, 58 F.3d at 1109; *Allard*, 991 F.2d at 1240. The Court does not, however, have to accept as true mere legal conclusions and unwarranted inferences of fact. *Lewis*, 135 F.3d at 405; *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Columbia Natural Resources*, 58 F.3d at 1109; *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In addition, unpleaded facts need not be conjured up by a court to save a complaint from dismissal

as it is the plaintiff's burden to adequately state a claim. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1969. Thus, a plaintiff must plead allegations sufficient to raise a claim above mere speculation and show he is entitled to relief and this substantive threshold is not achieved by factually unsupported assertions. *Id.* at 1964-1965 n. 3.

Whether the Court applies the *Twombly* or the pre-*Twombly* standard of review (assuming without finding that, in the context of a *pro se* civil rights complaint, these standards are different) to the instant complaint, McGowan has not carried his burden of pleading facts that, if true, demonstrates a constitutional violation. Therefore, as explained below, the Union's motion to dismiss will be granted and his remaining claims will be dismissed *sua sponte*. 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. Facts

McGowan makes several unrelated claims that span a period of approximately one year. As McGowan did not raise these claims in chronological order by date, the Court will identify and address the claims in the order in which they are raised in the complaint. First, McGowan complains that on September 3, 2004, he discerned he had been denied reclassification as required by state law.

Second, McGowan claims that on or about April 14, 2005, while restrained in handcuffs, black box security, and a full security waist chain, he was "brutally and illegally assaulted ... at the direction of Steve Cantrell, by Kenny Knight, Larry Brown, Roger Brown, and Richard Williams while J. Harbin, Teddy Blader, Derek Daughtry, Anita Garrett, A.Stanley, Steve Cantrell, and officer John Doe stood by and watched and failed to intervene ..." (Court File No. 33, p. 4). Subsequent to being seen by medical staff, McGowan claims he "was brutally and roughly jerked from the medical examination table by Robert Gibson, Jr. and forced to walk a long distance down hill on a

sprained right ankle and if plaintiff refused to walk he was dragged." (Court File No. 33, p. 4). At the transportation bus "Robert Gibson, Jr., tried to look as though he was aiding the plaintiff in getting

on the bus but actually tripped the plaintiff and caused the restraints on plaintiff's ankles to tighten and plaintiff's right ankle to swell more." (Court File No. 33, p. 4).

McGowan makes another claim of denial of reclassification on April 29, 2005. Next, McGowan claims that on April 6, 2005, and prior to that date he was forced to live in an unhealthy environment "due to the circulating air flow system and air born and other diseases of other inmates housed within plaintiffs housing unit who smear 'feces' and 'urine' on cell walls, as well as blood and other body fluids." McGowan has not been tested for diseases such as TB, HIV, AIDS, and any form of hepatitis (Court File No. 33, at 5).

McGowan claims on April 11, 2005, and prior to that date he was subjected to strip searches every day and forced to take showers without shower curtains in full view of other prison inmates. McGowan also claims that on August 9, 2005, he was subjected to "excessive punitive segregation" without a disciplinary infraction or a hearing and his Bibles, Bible Dictionary, Bible Concordance, and personal law books were confiscated.

McGowan contends he was punished for speaking with another inmate on February 14, 2005, when he was punished for "infraction #605821" (Court File No. 33, p. 6). McGowan avers on March 2, 2005, he was denied mail sent to him by his brother who is housed in another institution in retaliation for filing grievances. On December 5, 2004, McGowan was subjected to threats and racial slurs. On April 11 and 21, 2005, McGowan refused to get on his knees for the purpose of having leg restraints applied and as a result he was denied a shower for several days, was subjected

to an unsanitary environment, and threatened with bodily injury. On April 12, 2005, McGowan was punished with a disciplinary action for verbally objecting to getting on his knees for the application of leg restraints.

McGowan claims on April 21, 2005, Steve Cantrell, Diane Gilmore, and Robert Gibson, Jr. conspired to cover-up the illegal assault that occurred on April 14, 2005, when they fabricated reports and logs and told a witness what to say.

In his last claim, McGowan claims the Union collects fees from their members and operates in a manner permitting Brushy Mountain officials to be immune from the policies and procedures of the Tennessee Department of Correction, including protecting the prison officials from employee disciplinary proceedings in violation of the RICO Act and his civil rights.

## IV. Analysis

First the Court will analyze the Union's motion to dismiss (Court File No. 65). Then the Court will screen the complaint under 28 U.S.C. § 1915e.

### A. Motion to Dismiss

McGowan makes the following allegations against defendant American Federation of State, County, and Municipal Employees, AFL-CIO Local 2173 ("Union"):

> The Brushy Mountain Prison Employees Union has, and is continuing to operate (or) function in a manner that allows Brushy Mt. officials to be immune from various (TDOC) Tennessee Department of Correction policies and procedures, including Department employee disciplinary procedures, and this is the direct causation of the violation of the plaintiffs' protected, secured, and guaranteed U.S. Constitutional Rights. Furthermore, the Brushy Mt. Employees Union collects various fees for their actions on behalf of their members, and therefore benefitting from the illegal and corrupt practices of Brushy Mt. Prison Employees Union Employees. This constitutes organized crime, in that this Union Aids in covering up the many various violations of prisoners rights, relative to the illegal assaults, and brutal beatings of prisoners. All of which occurs while under the color of law, and plaintiff has standing to bring forth this claim under the civil suit provision of the RICO Act.

(Court File No. 33, p. 9).

McGowan also includes paragraph seventeen which at most is a general claim that all defendants acted under color of law. However, paragraph seventeen fails to allege any specific distinct conduct on the part of the defendant union. McGowan's response to the Union's motion to dismiss concedes he does not state a RICO claim and his response fails to demonstrate any § 1983 liability on the part of the Union.

In the motion to dismiss, defendant Union claims McGowan's bare legal conclusions against it fail to state a claim for relief under either 42 U.S.C. § 1983 or the civil provision of the RICO Act. The Union argues McGowan's failure to allege it engaged in any of the prohibited acts enumerated in 18 U.S.C. § 1962 requires its dismissal from the lawsuit.

Civil remedies for violations of the RICO Act are available to any "person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964 (c). Thus, in order to establish a federal civil RICO violation under § 1962 (c) McGowan must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity[,]" to state a claim. *Sedima, S.P.R.L. v. Imrex Co., Inc.* 473 U.S. 479, 496 (1985). In addition, a civil plaintiff asserting a section 1962 claim and seeking treble damages under § 1964(c) "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.*

The RICO Act prohibits certain activities:

> **(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise

which is            engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

McGowan has failed to allege the Union engaged in any of the prohibited acts enumerated in 18 U.S.C. § 1962 or identify which subsection of 18 U.S.C. § 1962 the Union has allegedly violated. McGowan has failed to provide any factual allegations that would support a claim under this Act. Not only does McGowan fail to identify the subsection of § 1962 which he claims the Union violated, he has failed to provide any factual allegations describing how the Union violated those provisions. McGowan has not demonstrated he has been injured in his business or property and the injuries were the result of the Union's violations of 18 U.S.C. § 1962. *Ziegler v. McGinnis*, 32 Fed.Appx. 697, 699 (6th Cir. 2002) (unpublished table decision), *available in* 2002 WL 169614 (claim that prisons telephone policy violated RICO dismissed because plaintiffs did not allege injury

to business or property).  Moreover, in his response to the motion to dismiss, McGowan concedes he does not state a RICO claim.

If and to what extent McGowan is relying on a theory of *respondeat superior* to establish liability under § 1983 on the part of the union, he is not entitled to any relief as the doctrine of *respondeat superior* does not apply to lawsuits under 42 U.S.C. § 1983 to impute liability where, as in the instant case,  there is no showing the defendant encouraged the specific incident of misconduct or in some other way directly participated in it. *See Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982), *cert. denied*, 459 U.S. 833 (1982). McGowan has failed to allege a RICO violation or a claim under 42 U.S.C. § 1983 against the Union.

Accordingly, the Union's motion to dismiss will be **GRANTED**(Court File No. 66).

**B.      Review Under 28 U.S.C. §   1915(e)**

Upon further review of McGowan's complaint and the entire record, the Court concludes, as explained below, this matter can be disposed of without an evidentiary hearing and the complaint will be **DISMISSED** in its entirety.  28 U.S.C. § 1915(e).

**1.      Time-Barred Claim**

McGowan claims on September 3, 2004, he discovered he was denied due process of law and equal protection when Roland D. Colson ("Colson"), Paul Flanders ("Flanders"), Jack Morgan ("Morgan"), James Worthington ("Worthington"), and Robert Walls ("Walls") "denied the State law required Reclassification Process[,]... a State created right, with a liberty interest[.]" (Court File No. 33, p. 4).  According to the record, McGowan knew or had reason to know of the alleged injury that is the basis of his first claim no later than September 3, 2004.  McGowan signed his  complaint on September 6, 2005, more than one year after he became aware of the alleged constitutional denial.

Therefore, his claim that on September 3, 2004, he discovered he had been denied "the State law required reclassification process" is time-barred.

There is a one-year statute of limitations contained in Tenn. Code Ann. § 28-3-104(a)(1) which applies to federal civil rights claims arising in Tennessee. *See Jackson v. Richards Medical Co.,* 961 F.2d 575, 578 (6th Cir. 1992). The statute begins to run when the plaintiff knows or has reason to know of the injury upon which his action is based. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997). A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

According to the record, McGowan realized on September 3, 2004, he was denied access to the reclassification process. Therefore, McGowan knew or had reason to know of the alleged injury that is the basis of his first claim no later than September 3, 2004. McGowan signed his complaint on September 6, 2005, more than one year after he became aware of the alleged constitutional denial.

Therefore, McGowan's claim against the defendants relating to the allegation that Colson, Flanders, Morgan, Worthington, and Walls denied him reclassification is time-barred, and will be **DISMISSED** *sua sponte* as frivolous. 28 U.S.C. § 1915(e)(2)(B)(I); *Gonzales v. Wyatt*, 157 F.3d 1016, 1019-20(5th Cir. 1998) (affirmed the 28 U.S.C. § 1915(e)(2)(B)(I) dismissal of a time-barred 42 U.S.C. § 1983 complaint as frivolous).

### 2.     Excessive Force Claim

McGowan alleges that, under the direction of Steve Cantrell ("Cantrell"), he was brutally assaulted while restrained in handcuffs, black box security box, and full security waist chain on

April 14, 2005, by Kenny Knight ("Knight"), Larry Brown ("L. Brown"), Roger Brown ("R. Brown"),[4] and Richard Williams ("Williams") while J. Harbin ("Harbin"), Teddy Blader ("Blader"), Derek Daughtry ("Daughtry"), Anita Garrett ("Garrett"), A. Stanley ("Stanley"), Steve Cantrell ("Cantrell"), and John Doe ("Doe") watched and failed to protect him from the assault.[5]

McGowan contends that after being seen by medical staff on that date, he was again subjected to cruel and unusual punishment when Robert Gibson, Jr., seized him from the examination table and forced him to walk a substantial distance down hill on a right sprained ankle "and if [he] refused to walk he was dragged." (Court File No. 33, p. 4). McGowan claims after he arrived at the transportation bus Gibson attempted to look as though he was assisting him in getting on the bus but actually tripped him and caused the ankle restraints to tighten increasing the swelling of his ankle.

Under the Eighth Amendment, the use of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Even though a plaintiff need not allege a serious injury to state a claim, the Eighth Amendment does not protect against *de minimis* or reasonable uses of force. *Id.* at 7, 9-10. Not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id.*

_____

[4]     McGowan claims L. Brown and R. Brown were restraining him during this brutal assault.

[5]     Documents submitted by McGowan indicate he refused to get down on his knees to have leg restraints applied and officers used force to get him down on his knees and apply the leg restraints (Court File No. 10).

(citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id*., at 834, (i.e., whether the force was "harmful enough" to establish a constitutional violation). Though plaintiff need not prove significant injury, *see Hudson*, 503 U.S. at 8-10 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury), he must show more than a *de minimis* one to satisfy this element of his claim. *Id.* at 8-9 (finding that Eighth Amendment allows minimal uses of physical force which are not "repugnant to the conscience of mankind" (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The subjective inquiry is focused on whether the defendants possessed a culpable state of mind. In the context of excessive force, the question is one of defendants' intent, whether defendants' used force in a good faith effort to restore order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 320.

In this case, McGowan's allegations are insufficient to show either a sufficiently serious deprivation or that the defendant possessed the requisite state of mind. He supplies no details as to the manner in which he was assaulted and no description of the circumstances surrounding the claimed assault. There is only McGowan's factually unsupported conclusion that he was brutally and illegally assaulted while restrained. *See Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979) ("Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation."). This is simply not enough to state a

claim of excessive force.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (While a complaint need not contain detailed factual allegations, a pleader has a duty to provide the grounds upon which a particular claim rests, and this duty compels him to supply, at a minimum, the necessary facts and grounds which will support his right to relief).

Instead, McGowan has submitted documents which supposedly support his claim, but which actually undermine it because they reflect he refused to get down on his knees, as he was ordered, so restraints could be placed on his legs.  The documents further reflect the defendants then forced him on the ground for the purpose of applying leg restraints, which resulted in a scuffle, which in turn resulted in a slight swelling to McGowan's ankle (Court File No. 10).  And it is also worth mentioning McGowan does not contend the assault was unprovoked or he was not offering any resistance.  Thus, the record seemingly supports that the force defendants used was a good faith effort to maintain or restore discipline and not a malicious and sadistic effort to cause harm. *Hudson*, 503 U.S. at 6.

Be that as it may, McGowan's § 1983 claim alleging a brutal assault is not only conclusive but it also fails to establish the objective and subjective elements of an Eighth Amendment claim. The only evidence before the Court arguably suggesting the prison officers were acting maliciously or sadistically is plaintiff's assertion that the officers brutally assaulted him while he was handcuffed.  McGowan's factually unsupported allegation of being "brutally assaulted" is too general to establish that a constitutional violation occurred and is not supported by his only claimed injury of a an injured ankle.  The burden of pleading facts that, if true, will support a constitutional violation lies with a plaintiff.  This plaintiff has not carried that burden as he has not alleged the force used was not for the purpose of maintaining or restoring discipline or that it was maliciously

or sadistically used for the purpose of causing harm which is the only type of force that violates an inmate's Eighth Amendment right. *Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992). McGowan has failed to allege the officers acted other than in a good-faith effort or provide any allegations to meet the subjective component of stating an Eighth Amendment claim. For these reasons, it will be **DISMISSED.**

### 3. Reclassification Claim (April 29, 2005)

In his next claim, McGowan contends he was denied the State Reclassification Process on April 29, 2005, by defendants Cantrell, Colson, Potter, and Brown, which violated his right to due process and equal protection of the laws.

However, prisoners have no statutory or constitutional entitlement to prisoner classification or rehabilitative programs. *Moody v. Daggett,* 429 U.S. 78, 88 at n. 9 (1976) ("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system...and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("'Inmates have no protectable property or liberty interest in custodial classifications." *quoting Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)).

Accordingly, since McGowan has not demonstrated a protected liberty interest in the reclassification process, this claim will be **DISMISSED** for failure to state a claim upon which relief can be granted.

### 4. Housing Conditions Claim

McGowan claims he was forced to live in an unhealthy environment due to the inadequate air flow system and air borne diseases of the inmates housed within plaintiffs housing unit who smear 'feces' and 'urine' on cell walls, as well as blood and other body fluids. This constitutes cruel and unusual punishment. . .

(Court File No. 33). In addition, he claims defendants Jeffers, Morgan, Worthington, Walls, and Cantrell refused to have him tested for TB, HIV, AIDS, and all forms of hepatitis (Court File No. 33, p. 5). According to McGowan, this constitutes cruel and unusual punishment.

The Supreme Court has recognized that exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial "risk of serious damage to this future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that exposure to environmental tobacco smoke states an Eighth Amendment cause of action even though inmate was asymptomatic because the health risk posed by involuntary exposure to second hand smoke was 'sufficiently imminent"). By the same token, inmates who prove their personal safety is threatened because they were mingled with other inmates who had serious contagious diseases were entitled to relief under the Eighth Amendment. *Id.* at 33. Thus, an Eighth Amendment infringement may occur if an inmate is confined with a fellow prisoner with a serious contagious disease, such as tuberculosis, which is spread by airborne particles, but not with an HIV-positive inmate because HIV is not airborne or spread by casual contact. *See Bolton v. Goord*, 992 F.Supp. 604, 628 (S.D.N.Y. 1998); *see also, Glick v. Henderson*, 855 F.2d 536, 539 (8th Cir. 1998) (prison's failure to segregate inmates with HIV/AIDS did not violate Eighth Amendment); *but see Massick v. North Central Correctional Facility*, 136 F.3d 580 (8th Cir. 1998) (holding that

sharing cell with HIV-positive inmate who was bleeding could subject healthy inmate to substantial risk of harm).

In this case, McGowan has not provided any facts to demonstrate he was exposed to a risk of an infectious disease. Furthermore, he has not alleged any inmate had been diagnosed with any infectious disease. And, he has not provided any factual support for his allegation that he has not been tested for the diseases which he listed. There is no allegation, record, or medical proof that an infected inmate was actually in the institution or that McGowan was exposed to any such infection while incarcerated in this institution.

Thus, McGowan has not offered proof, much less an allegation, to show he was incarcerated under conditions posing a substantial risk of serious harm, he has failed to satisfy the objective component of an Eighth Amendment claim. The complaint also fails to allege the subjective component because it contains no assertion that any named defendant knew an inmate had an infectious disease and disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (to demonstrate deliberate indifference, a plaintiff must show the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and the official must have drawn the inference).

Although the smearing of feces, urine, blood, and other body fluids on the prison walls contributes to an unhealthy environment, McGowan has not shown that it presented a substantial serious risk to his health and defendants knew of and disregarded this risk. McGowan has not made any allegations from which the Court can infer the length of time which the conditions existed; the extent of McGowan's exposure to these walls, if any; or that the defendants knew of and ignored these conditions. Therefore, McGowan, who has not provided any facts regarding the defendants

culpability, has not alleged the defendants were deliberately indifferent to a substantial risk of harm to his health, thus, he has not stated an Eighth Amendment claim.

### 5.    Strip Searches

McGowan claims on April 11, 2005, and prior to that date, he was subjected to strip searches and forced to take showers without curtains and in full view of other prison inmates.[6] McGowan claims Cantrell, Walls, Worthington, and Colson were responsible for these acts which he claims constitutes sexual harassment and cruel and unusual punishment.

While a prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security, *see Bell v. Wolfish*, 441 U.S. 520, 537, 558-60 (1979), the Supreme Court has recognized a prisoner retains a remedy for "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The Eighth Amendment protects against bodily searches which are maliciously motivated, unrelated to institutional security, and hence "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Although there is no question that strip searches and showers in full view of other inmates may be unpleasant, humiliating, and embarrassing to prisoners, not every psychological discomfort a prisoner endures amounts to a constitutional violation.

Here, McGowan has not provided any factual support to these allegations. Thus, not only has he failed to meet the objective prong of the Eighth Amendment inquiry as there is no proof that

---

[6]     McGowan's submissions reflect that there are doors on the showers with small windows so the officers can check on the safety and welfare of inmates who are taking showers. "As for other inmates in the pod watching, this is not happening unless they have x-ray vision and can see through doors. The small windows in the shower doors are at such an angle that other inmates cannot see in." (Court File 10, Response of Supervisor of Grieved Employee or Department, April 27, 2005).

his treatment on April 11, 2005, and prior to that date was sufficiently serious to warrant possible liability, he has also failed to meet the subjective prong. This is so because there are no allegations of fact to show the named defendants intended to deliberately harm him or punish him through the administration of strip searches or curtain-less showers or that any defendant touched, badgered, ridiculed, threatened, or intimidated McGowan during the searches or showers. Accordingly, McGowan has failed to state a viable Eighth Amendment violation and this claim will be dismissed.

### 6. Punitive Segregation

McGowan claims on or about August 9, 2005, he was placed in "punitive segregation" without being issued a disciplinary infraction or being taken before a disciplinary board. McGowan claims the imposition of the excessive punitive segregation by Cantrell, Gilmore, and Colson denied him due process and equal protection under the law.

Once again McGowan has failed to provide any factual support for his conclusions. McGowan does not give the specifics surrounding this alleged punitive segregation, such as the amount of time he spent in segregation or the reason he was placed there. By themselves, these accusations are merely conclusions and fail to state a constitutional claim under the holding in *Sandin v. Conner,* 515 U.S. 472 (1995). *Sandin* ruled not every action taken by correctional officials as a punitive measure encroaches upon a liberty interested protected under the Due Process Clause. 515 U.S. at 484. Instead, state restraint of an inmate will violate due process only where it imposes an "atypical and significant deprivation in relation to the ordinary incidents of prison life." *Id.* "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," and a prisoner's loss of privileges and assignment to segregation for a short period of time, "though concededly punitive, do [] not

represent a dramatic departure from the basic conditions" of the sentence imposed upon the inmate nor do they

"impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484-85.

Assuming Mcgowan is correct in arguing he was not fully afforded the guarantees set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (holding prisoners faced with the loss of good time credits or solitary confinement must be afforded advance written notice of claimed violation, a written statement of fact findings, and a statement of the evidence), or in the rules and regulations of the Tennessee Department of Correction ("TDOC"), these errors do not rise to the level of a due process violation protected by the United States Constitution. The *Wolff* Court observed that the procedures required by its decision for the deprivation of good time and solitary confinement would *not* be required for the imposition of lesser penalties such as the loss of privileges. 418 U.S. at 572, n. 19 (emphasis added). McGowan does not claim he was denied good time or placed in solitary confinement; rather, he claims he was placed in "punitive segregation" (Court File No. 33, at 6). Because McGowan has not demonstrated his segregation implicated a liberty interest as there is no evidence the alleged deprivations imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life or resulted in any change in the conditions of his confinement in such an unanticipated manner as to implicate the Due Process Clause, he has failed to state a constitutional violation.

McGowan also asserts defendants did not comply with TDOC's procedural requirements when they placed him in segregated confinement. The Equal Protection Clause provides "[n]o State

shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, the plaintiff must show the defendants intentionally discriminated against him based on his membership in a suspect class. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988) (a plaintiff must show he "was victimized because of some suspect classification, which is an essential element of an equal protection claim"). Additionally, he must demonstrate a discriminatory purpose was a factor in the defendant's challenged practice and that he was treated differently from those who are similarly situated to him. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265-66, 170 n. 21 (1997).

None of these things has been established. McGowan does not allege he is a member of a protected class;[7] he has not demonstrated any purposeful discrimination; and he has not shown he was treated differently from similarly situated prisoners. Thus, he has failed to allege an equal protection violation.

Accordingly, all claims related to McGowan's punitive segregation will be **DISMISSED**.

**7.    Implied Access to Courts Claim; Free Exercise Claim**

McGowan contends Gilmore, Cantrell, and Hayes took his personal law books and religious material on August 9, 2005, violating the rights secured him by the First Amendment to the United States Constitution.[8]

---

[7]    Indeed, prisoners are not a suspect class for purposes of an equal protections analysis. *Wilson v. Yaklick*, 148 F.3d 596, 604 (6th Cir. 1998).

[8]    Though McGowan also frames his claim as a violation of the cruel and unusual punishment clause, he has not stated an Eighth Amendment cruel and unusual treatment violation, as he has alleged no wanton and unnecessary infliction of pain which would rise to such a level. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, if there is an explicit textual source of

### a. Right of Access to Courts

To the extent McGowan is asserting the denial of his personal law books for one day served to deny him access to the courts, he has failed to state a claim. McGowan must demonstrate the conduct of the prison officials actually prevented his access to courts or it actually prejudiced his ability to litigate a lawsuit. *Lewis v. Casey,* 518 U.S. 343, 351-55 (1996); *Bey v. Toombs,* 19 F.3d 1432 (6th Cir. March 28, 1994) (unpublished table decision), *available in* 1994 WL 105900 *2. To prevail on this claim, McGowan must show actual injury which has been defined as, "actual prejudice with respect to contemplated or existing litigation such as the inability to meet a filing deadline to present a claim. *Lewis v. Casey,* 518 U.S. at 347-48. His submissions amount to nothing more than speculative, factually unsupported allegations that he was denied access to his personal law books. Absent entirely is any showing that a one-day deprivation of law books caused him any prejudice or injury in pursuing his legal actions. *See Berryman v. Overton*, 19 F.3d 18 (6th Cir. March 7, 1994) (unpublished table decision), *available in* 1994 WL 69579 *1 (*citing Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir. 1985)). McGowan's failure to allege prejudice renders this claim vague and factually unsupported. *See Smith v. Capots,* 78 F.3d 585 (6th Cir. March 6, 1996) (unpublished table decision), *available in* 1996 WL 99322, at *3.

The Court concludes this claim is meritless and will **DISMISS** it as frivolous.

### b. Right to Practice Religion

McGowan asserts he was denied his First Amendment right to practice his religion when the

---

constitutional protection, then that Amendment ( in this case, the First Amendment) must be the guide for analyzing his claims. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thaddeus-X v. Blatter*, 175 F.3d 378, 387-88 (6th Cir. 1999).

defendants took his Bibles, Bible Dictionary, and Bible Concordance on August 9, 2005.[9]  Thus, it appears he was denied this material for one day.  The burden is on McGowan to demonstrate he was denied his First Amendment right to practice his religion.  This he has not done as McGowan's factually unsupported claim fails to allege a constitutional violation.

Even if the claim were not devoid of facts, prisoners have a First Amendment right to practice their religious beliefs, *Hudson v. Palmer*, 468 U.S. 517, 523 (1984), but this right is not unlimited.  All that is required under the First Amendment is prisoners be provided "reasonable opportunities" to practice their religion.  *Id.*  Therefore, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests.  *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979)(limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate the First Amendment rights of inmates); *Pollack v. Marshall*, 845 F.2d 656, 658-60 (6th Cir. 1988) (plaintiff who challenged regulation limiting the length of prisoners' hair did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation failed to state a constitutional violation).

As to McGowan's claim that he was denied his right to practice his religion when his personal religious material was confiscated on August 9, 2005, he has failed to provide any factual support or allege any facts surrounding the confiscation.  Thus, it appears he was denied this material for one day.  The fact McGowan's religious books were confiscated for one day does not

---

[9]     The Court cannot help but notice that August 9, 2005, when McGowan claims to have been denied access to courts and free exercise of religion, is the same date he contends he was moved to segregation.

demonstrate he was denied reasonable opportunities to exercise his First Amendment right to religious freedom. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (inmates must not be denied reasonable opportunity to pursue religion). The burden is on McGowan to demonstrate his right to practice his religion was denied. This he has not done. McGowan's factually unsupported claim fails to allege a constitutional violation and will be **DISMISSED**.

### 8. Free Speech/Retaliation Claim

Next McGowan claims he was punished for speaking to another inmate. McGowan claims Davidson deliberately denied his due process rights when he found McGowan guilty of an infraction on February 14, 2005, without any evidence. The Court infers McGowan is asserting he was convicted of the infraction because he spoke to another inmate.

Although prisoners have a First Amendment right to free speech, *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977), restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests." *see Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

Here McGowan's factually unsupported assertion of interference with his freedom of speech is insufficient to show a constitutional violation. This is so because he provides no chronology of events which it arguably could be inferred that he was punished merely for speaking to another inmate. Therefore, this claim will be **DISMISSED**.

### 9. Mail Interference/Retaliation Claim

McGowan claims that on March 2, 2005, defendants Hall and Morgan withheld mail sent

to him by his brother, who was incarcerated in another institution, in retaliation for the numerous complaints he had filed. As discussed, a claim for retaliation must contain "a chronology of events" which plausibly would support an inference of retaliation. *Zimmerman v. Tribble*, 226 F.3d at 573. Specifically, McGowan must demonstrate he engaged in protected conduct; he suffered an adverse action; a causal connection exists between the protected conduct and the adverse action; and the alleged retaliation is capable of deterring a person of ordinary firmness from exercising his constitutional rights. *See Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004).

The causation element is missing here. Though McGowan maintains he was denied a letter from his brother because he had filed numerous past complaints, he has not established, much less alleged, the filing of his numerous complaints was closely followed by the claimed retaliatory act of denying access to his brother's correspondence. Moreover, the mere fact McGowan was denied correspondence from his brother after the filing of numerous complaints is not, without more, sufficient to state a retaliation claim. Since McGowan has not alleged a chronology of events from which the Court can infer the filing of complaints motivated the alleged adverse action, this claim of retaliation fails to state a viable § 1983 claim and will be **DISMISSED**.

### 10. Harassments and Threats

McGowan claims defendants L. Hall and S. Hall subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they harassed and threatened him on December 5, 2004, repeatedly threatening him with bodily harm and using racial slurs in an attempt, according to McGowan, to incite him to react so they could justifiably assault him. While defendants' alleged conduct is despicable and to be condemned, it does not violate the Constitution because neither verbal harassment nor threats constitute punishment within the context of the Eighth

Amendment. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). In addition, "[t]he occasional sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude." *Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir. 1999). Accordingly, McGowan's claim that defendants L. Hall and S. Hall subjected him to harassment and racial slurs on December 5, 2004, a claim that does not rise to a level of constitutional magnitude, will be **DISMISSED**.

### 11. Cruel and Unusual Punishment

On April 11 and 21, 2005, McGowan refused to get on his knees to have leg restraints applied (Court File No. 33, Complaint, Claim #12 and 15). McGowan contends Cantrell, Byrd, L. Hall, S. Hall, and Hayes denied him showers for several days and housed him in unsanitary conditions with problem and mentally ill inmates, repeatedly threatened physical bodily injury, and subjected him to racial slurs (Court File No. 33, p. 7). In a related retaliation claim (Court File No. 33, Claim #13, p. 8), McGowan claims Cantrell issued him a disciplinary infraction on April 12, 2005, because he objected to getting on his knees to have leg restraints applied.

As previously discussed, to state a retaliation claim, a plaintiff must advance nonconclusive allegations establishing the conduct at issue was protected; the defendant took adverse action against the plaintiff; and demonstrate a causal connection between the protected conduct and the adverse action. *See Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001). Furthermore, as the Second Circuit has cautioned, a prisoner's retaliation claim must be examined with skepticism and particular care as retaliation claims are prone to abuse and "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). Thus, a prisoner's claim of retaliation must be supported by specific and detailed factual allegations.

*Id.*

The Court assumes, but does not find, McGowan has satisfied the first prong of the retaliation standard (i.e., he engaged in protected conduct when he refused to get on his knees).  This does not help McGowan, however, because of the specific pleading requirements for a prisoner retaliation claim and because McGowan's unsubstantiated allegations are insufficient to tie defendants' alleged action to his (assumed) protected conduct.

Moreover, McGowan has not provided any factual development of the claims he was denied showers for several days; housed in an unsanitary environment with troubled and mentally ill inmates; was subjected to threats of injury and racial slurs; and suffered retaliation.  Thus, the claims are mere conclusions and, as such, fail to state a claim for a constitutional violation.  For these reasons, these claims will be **DISMISSED**.

### 12.     Conspiracy Claim

McGowan claims on April 12, 2005, defendants Cantrell, Gilmore, and Gibson denied him due process when they conspired to cover-up the illegal assault on him that occurred on April 14, 2005.  McGowan claims these defendants conspired to obstruct justice and tampered with a witness when they instructed a witness what to say to a federal investigator and fabricated reports and logs.

To state a conspiracy claim McGowan must allege an agreement between two or more state actors to act in concert to inflict an unconstitutional injury, and an overt act done in furtherance of achieving that goal.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  McGowan has not identified who assaulted him; the facts surrounding the assault; the witness with whom defendants tampered; what they instructed the witness to say; nor identified or submitted the alleged fabricated reports and logs.  "[C]omplaints containing only conclusory, vague, or general

allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; '[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts," state a substantial claim of federal conspiracy under 42 U.S.C. § 1983).

Therefore, this claim will be **DISMISSED** as it is factually unsupported and does nothing more than state conclusions.

**V.      Conclusion**

Because McGowan has failed to set forth any facts in support of his claims, and alternatively, failed to establish any constitutional violations, his complaint (Court File No. 33) will be **DISMISSED** for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983. In addition, the motion to dismiss filed by the Union will be **GRANTED** (Court File No. 66).

An order will enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**