UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JOHNNY L. MCGOWAN, JR. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | No. 1:05-cv-334 |
| | ) | *Chief Judge Curtis L. Collier* |
| STEVE CANTRELL, CPL. ROGER BROWN, | ) | |
| RICHARD WILLIAMS, KENNY KNIGHT, | ) | |
| CPL. A. STANLEY, TEDDY BLASLER, | ) | |
| ANITA GARRETT, OFFICER FNU HARBIN, | ) | |
| CPL. ROBERT GIBSON, JR., DEREK | ) | |
| DAUGHERTY, LARRY BROWN, | ) | |
| All defendants are sued in | ) | |
| their individual and official capacities; | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

This *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 was previously dismissed without prejudice under 42 U.S.C. § 1997(e) for failure to exhaust administrative remedies (Court File Nos. 12 & 13). Plaintiff Johnny L. McGowan, Jr. ("Plaintiff" or "McGowan") successfully appealed and his case was remanded by the United States Court of Appeals for the Sixth Circuit for further consideration in light of the Supreme Court's intervening decision in *Jones v. Bock*, 549 U.S. 199 (2007), wherein the Supreme Court overruled a number of rules interpreting the requirements of §1997(e) which had been adopted down by the Sixth Circuit. The Court required Plaintiff to redraft his complaint before allowing service.

Plaintiff redrafted his complaint pursuant to the Court's directive, and the parties submitted a number of motions–six by Defendants and seven by Plaintiff. The Court granted the Union's dispositive motion and *sua sponte* dismissed Plaintiff's complaint in its entirety for failure to state a claim (Court File Nos. 141, 142).

Plaintiff appealed the judgment and the United States Court of Appeals for the Sixth Circuit reversed in part, affirmed in part, and remanded the case for further proceedings consistent with its opinion. Specifically, the Sixth Circuit remanded the following claims of Plaintiff: (1) while fully restrained, he was brutally and illegally assaulted; (2) after being seen by medical staff, he was brutally and roughly jerked from the medical table; and (3) he was tripped, causing the leg restraints to tighten around his ankles and one of his ankles to swell.[1]

For the reasons explained below, Defendants' dispositive motion (Court File No. 213) shall be **GRANTED**, and Plaintiff's complaint shall be **DISMISSED** (Court File No. 33).

I.      **Non-Dispositive Motions**

In the first of several pending motions, McGowan requests the Court to adopt a proposed amended complaint which he previously untimely filed after the Court initially dismissed his complaint for failure to state a claim (Court File No. 221). The previous motion to amend (Court File No. 145) was denied as untimely (Court File No. 146). Moreover, the Sixth Circuit's conclusion that the post-judgment motion lacked merit precludes this Court from revisiting that issue. *See United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (Under the remand rule—a version of the law-of-the-case doctrine—a district court must adhere to the commands of the higher court). Accordingly, McGowan's motion to adopt his post-judgment amended complaint will be **DENIED** (Court File No. 221).

---

[1]      Because the parties have interpreted the terms of the remand to encompass the "failure to protect" claim, the Court will also analyze that claim.

Therefore, since the complaint will be dismissed, Plaintiff's motions requesting issuance of subpoenas and writs of habeas corpus ad testificandum are **DENIED as MOOT** (Court File Nos. 233-238; 241).

## II.     Standard of Review

### A.     *Pro Se* Pleadings

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997).

**B.     Summary Judgment**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).    Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.

The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Kentucky Div., Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record sua sponte for genuine issues of material fact).  To refute that no genuine issue of material fact exists, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. at 322.  A mere scintilla of evidence is not enough.  *Anderson v. Lilberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  In other words, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*. 477 U.S. at 324.  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Id*. at 323.

4

In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court then determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

## III.    Facts

The Sixth Circuit remanded some claims back to this Court for further proceedings. These claims consist of three different alleged instances of excessive force and possibly, the claim that certain prison officers observed the assault but neglected to intervene on Plainitff's behalf. Plaintiff has provided scant facts to support his allegations. Therefore, the Court will recite the facts, either uncontested or taken in the light most favorable to Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record.[2]  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is

---

[2]      The majority of the facts supplied by Plaintiff to support his allegations are found in an unsworn memorandum of law in support of his response to the motion for summary judgment. Although his amended complaint is under oath, it contains very few, if any, facts to support his allegations. Accordingly, very few facts come from Plaintiff's sworn submissions; most come from documents and Defendant's affidavits.

5

uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." (internal quotation marks and citations omitted)).[3]

On April 12, 2005, Plaintiff, an inmate housed in the high security area of the Brushy Mountain Correctional Complex ("BMCC"), sent a written communication to prison officials, which stated, in essence, he would no longer kneel to have leg irons applied and, if the staff resorted to force, he would sue them and file criminal charges (Court File No. 216-6).[4]  On that same date, due to the threatening nature of the communication, Plaintiff was issued a disciplinary infraction for attempting to intimidate an employee and was warned that any future refusal to obey an order to kneel for leg irons would be considered a hostile act and would be met with further disciplinary action (Court File Nos. 216-2; 216-6).[5]

Two days later, McGowan was being transported from the BMCC to the Riverbend Maximum Security Institution ("RMSI") to attend a meeting with his attorney.  Plaintiff was waiting in the visiting gallery for the transportation officers.  At some point, Plaintiff, then restrained in handcuffs, black security box, and a full security waist chain, was ordered to kneel so that the transportation officers' leg irons could be applied, but he refused  (Court File Nos. 33; 216-2, p.3; and 223).  Defendant Steve Cantrell ("Defendant Cantrell") repeatedly ordered Plaintiff to kneel but he repeatedly refused.  Although Plaintiff refused to kneel, he offered to stand with his back to

---

[3]     Although the affidavits supplying the uncontested facts come from Defendants, prison documents generated at the time of the incident support the uncontested facts.

[4]     At the time of this incident, Brushy Mountain Post Orders required inmates to turn their backs to officers and kneel so leg irons could be applied.  In addition, the Orders required two officers to escort a maximum security inmate when he was outside of his cell (Court File No. 229-2).

[5]     The write-up was overturned on appeal and was removed from Plaintiff's file (Court File No. 216-7).

officers for the application of the restraints.[6]  At Defendant Cantrell's direction, Defendants Richard

Williams ("Defendant Williams), Kenny Knight ("Defendant Knight"), Larry Brown ("Defendant

L. Brown"), Roger Brown ("Defendant R. Brown"), and Derek Daughtery ("Defendant Daughtery")

grabbed Plaintiff while he was still sitting on the bench in the visitation booth and threw him on the

ground (Court File No. 225-1, Affidavit of Inmate Nikia K. Grasty).  Defendant Knight had

Plaintiff's right foot, holding it in the air and twisting it, Defendant Daugherty held his left foot, and

Defendant Williams was pushing Plaintiff's head into the floor repeatedly (Court File No. 225-1,

Affidavit of Inmate Nikia K. Grasty).  While this was taking place, Defendants Cantrell, Teddy

Blasler ("Defendant Blasler"), Daugherty,[7] Anita Garrett ("Defendant Garrett"),  and A. Stanley,

a.k.a.  Annaliese Slobecheski ("Defendant Stanley") observed the alleged assault but failed to

intervene.


     Plaintiff and Defendants Knight, Williams, and R. Brown were injured during the

---

[6]     Defendant Cantrell avers he was following Posts Orders and he was well aware of Plaintiff's history of violence against staff members and other inmates. He, therefore, declined McGowan's offer to stand for application of the leg irons.  The record reflects that prior to this incident, Plaintiff had been issued multiple write-ups involving violence, including sexual harassment(1), indecent exposure(1), extortion (1), attempted escape(1), participated in a riot (1), possession of deadly weapon (3), assault on staff (13), assault (11), attempt to intimidate an employee (3), and threatened employees (9). Specifically, Plaintiff spat on, kicked, thrown liquid on, grabbed, head-butted, thrown food trays at, struck with a club, and shoved staff on different occasions.  Two of the assaults resulted in staff going to outside hospitals for treatment.  Plaintiff has made sexual advances—physical and verbal—to employees.  In addition, Plaintiff, a confirmed member of the STG Crips and maximum custody prisoner, once grabbed an officer's hand through his pie flap and pulled it until he got the keys from the officer and once was found in possession of a missing master key to the padlocks in the maximum security unit (Court File No. 216-9, p. 3-4).

[7]     There is conflicting evidence presented by Plaintiff. Plaintiff claims Daugherty failed to intervene while his witness maintains Daugherty participated in the takedown.  It would be impossible for Daugherty to fail to intervene and, at the same time, join in the takedown.

"takedown" of Plaintiff (Court File Nos. 216-2, pp. 15-17).[8]  Plaintiff was taken to medical [9] where

he informed Nurse Bow of the pain in his right ankle but declared himself able to walk with minimal

pain (Court File No. 216-2, p. 15 (medical record)).[10]  Thereafter, as alleged by Plaintiff, "[He] was

brutally and roughly jerked from the medical examination table by Robert Gibson, Jr., and forced

to walk a long distance down hill on a sprained right ankle. . . . Once plaintiff got to the

transportation bus Robert Gibson Jr., tried to look as though he was aiding the plaintiff in getting

on the bus, but actually tripped the plaintiff and caused the restraints on plaintiff's ankles to tighten,

and plaintiff's right ankle to swell more" (Court File No. 33, p. 4).

## IV.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) mandates early judicial screening of

prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit.

42 U.S.C. § 1997(e)(a).  The Supreme Court of the United States abrogated procedural rules

previously adopted by the United States Court of Appeals for the Sixth Circuit in their January 22,

2007 decision in *Jones v. Bock*, 549 U.S. 199 (2007).  In that case, the Supreme Court concluded

the judicially created rules of the Sixth Circuit Court of Appeals are not required by the PLRA and

---

[8]    Plaintiff hurt his right ankle; Defendant Knight experienced pain in his right shin where he suffered a small abrasion and blush discoloration; Defendant R. Brown twisted his right middle finger which had to be iced and put in a splint; and Defendant Williams strained his knee (Court File No. 216-2, pp. 15-17).

[9]    When physical force is applied to an inmate, it is prison policy to immediately take the inmate to the clinic or triage to have him evaluated (Court File No. 216-2).

[10]    These facts are contained in the medical report.  Although Plaintiff avers in his complaint that he was "forced to walk a long distance down hill on a sprained right ankle . . . [and] if [he] refused to walk, he was dragged[,] (Court File No. 33, p. 4), he does not deny that he told Nurse Bow that he was able to walk with minimal pain.  Nevertheless, this discrete issue is not relevant to the Court's analysis of the claims before it.

8

that crafting and imposing the rules exceeded the proper limits on the judicial role. Specifically, the Supreme Court held that failure to exhaust administrative remedies is an affirmative defense under the PLRA, and inmates are not required to plead or demonstrate exhaustion in their complaints. *Id.* at 211-212. Thus, the burden is on a defendant to plead and prove the prisoner failed to exhaust his administrative remedies. The Court also held "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. Finally, the Supreme Court held a complaint containing both exhausted and unexhausted claims should not be dismissed in its entirety but rather, the district court should proceed with the exhausted claims while dismissing the unexhausted claims. *Id.* at 218-23.

As the Supreme Court observed, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit. In their motion for Summary Judgment, Defendants rely on the affirmative defense of failure to exhaust administrative remedies, and contend Plaintiff never made any grievance with respect to some of the issues raised in the complaint. In support of their defense, Defendants have filed the grievance which Plaintiff filed in relation to this incident (Court File No. 216-4, pp. 4-6).

Defendants contend Plaintiff did not exhaust the prison grievance process as to Defendants Basler, R. Brown, Daughtery, Gibson, Harbin, and Garrett. Specifically, it is argued that because Plaintiff did not mention Defendants Basler and Garrett in his prison grievance, he failed to exhaust his remedies as to these two Defendants. And as to the other Defendants, although Plaintiff mentioned them in his grievance, he failed to attribute any unconstitutional actions to them.

In *Jones v. Bock* the United States Supreme Court determined that:

Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Id.* at 218. Defendants have not demonstrated that BMCC's grievance procedures require the naming of particular officials or requires a specific allegation attributing unconstitutional conduct to each named party in the grievance. Due to the lack of this proof, and because Plaintiff claimed there were officers watching the alleged assault without intervening, and that all the officers, with the exception of Defendant Gibson, were present during the alleged assault, the Court will deny Defendant's request to dismiss the claims against all of these Defendants for failure to exhaust administrative remedies, with the exception of Defendant Gibson.

As to Defendant Gibson, the mere mention of his name in the grievance stating Plaintiff walked to the bus with his aid, Defendant Gibson assisted him on the bus, and Plaintiff fell at the top of the steps did not alert prison officials to a problem, and Plaintiff failed to describe any problem with Defendant Gibson in the grievance. Thus, Plaintiff failed to comply with Tennessee Department of Corrections ("TDOC") Inmate Grievance Procedures, Section 501.01, IV.E., which requires "[a] written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff . . . or any condition or incident within the Department or institution which personally affects the inmate complainant.[11] Moreover, the TDOC Inmate Grievance Procedures handbook, which is attached to the above referenced section, specifies on page seven, under the First Level of Review section, "[t]he grievant shall describe the problem in detail, including times, dates, names . . . " Defendant Gibson has

---

[11]        http://state.tn.us/correction/policies/poly.htm.

submitted an affidavit averring no grievance was filed alleging he brutally removed Plaintiff from the examination table or that he tripped Plaintiff while appearing to assist him. Plaintiff has neither averred he filed such a grievance nor provided the Court with a copy of such grievance, and Defendant Gibson avers he has no knowledge of a grievance being filed against him with regard to this incident (Court File No. 216-3). The Court has reviewed the complete file before it, and the only grievance the Court finds before it pertaining to this incident is Inmate Grievance Number 8907 (Court File No. 216-4) wherein Plaintiff did not claim that he was brutally removed from the examination table or that Defendant Gibson tripped him. Accordingly, since Plaintiff filed no grievance alleging any mistreatment or misconduct by, or problem with Defendant Gibson, he did not sufficiently grieve any claim against him and, thereby, failed to properly exhaust his administrative remedies as to this Defendant.

Defendant Gibson has properly supported his affirmative defense regarding administrative exhaustion,[12] and therefore, the action against Defendant Gibson will be **DISMISSED WITHOUT**

---

[12] Defendant Gibson avers, in his affidavit, he was informed Plaintiff needed to be escorted from the triage room to the chain bus for transportation to another prison. When Defendant Gibson arrived, Plaintiff was sitting on the examination table. Defendant Gibson has a vague recollection that Plaintiff complained about his ankle, but indicated he could walk. Defendant Gibson helped him off the table and escorted him to the sally port area. There, he transferred Plaintiff's custody to the waiting transportation officials (Court File No. 216-3, p. 2).

Defendant Gibson asserts he had no confrontation with Plaintiff, did not trip or assault Plaintiff, did not see Plaintiff trip or fall, was never alone with Plaintiff, and had no reason to assault Plaintiff. This Defendant further asserts Plaintiff never complained to him that his leg irons were too tight and never said he needed assistance in getting to the chain bus. Defendant Gibson had no knowledge that Plaintiff refused to kneel for the leg irons, that force had been used, and, indeed, was unaware of the incident until he received a copy of the complaint. Finally, Defendant Gibson avers "I am not aware of a grievance being filed against me with regard to this incident, and I do not recall responding to one, if one was filed." (Court File No. 216-3,pp. 2-3).

**PREJUDICE** for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[13]

However, even though he did not name each individual officer he now sues for failure to intervene and protect him from the alleged assault, Plaintiff has exhausted his administrative remedies as to both his claim that some Defendants used excessive force when applying the leg irons while other Defendants failed to intervene on his behalf. *See Jones v. Bock*, 549 at 219 (exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievance).

## V.     Analysis

---

[13]     Even if these claims had been exhausted, Plaintiff would not be entitled to relief. Other than his bald allegations in his amended complaint, Plaintiff has failed to provide any facts to support such a claim. Not only has Defendant Gibson testified, in his affidavit, that neither alleged incident occurred, but his affidavit is supported by Defendant Cantrell's affidavit and by Plaintiff's own grievance which contains no allegation that Plaintiff was brutally and roughly removed from the examination table or tripped while boarding the bus (Court File No. 216-3).

Also, Plaintiff has not come forward with any significant probative evidence demonstrating a genuine issue exists as to these two claims. Plaintiff has not described how he was removed from the examination table, i.e., what part of his body Defendant Gibson used to brutally remove him from the table, or how Defendant Gibson tripped him, i.e., whether he pushed him, kicked a foot or both his feet from underneath him, or grabbed the leg irons when he tried to take a step. Moreover, no medical evidence in the record supports Plaintiff contention that he was brutally removed from the examination table or tripped when boarding the bus, i.e., no proof that there were indentations or cuts from the leg irons. Had Plaintiff been brutally removed from the examination table or intentionally tripped, as alleged, there would have been evidence of it which, presumably, would be noted by the receiving institution's medical personnel. Importantly, there is no evidence in the record that Plaintiff ever made such a complaint nor has he submitted affidavits from anyone who observed the alleged brutality and tripping. Thus, the lack of any significant probative evidence and the lack of proof of any injury sustained as the result of Defendant Gibson's alleged unconstitutional acts cannot be squared with the alleged use of brutal force to remove him from the examination table or the alleged intentional tripping. Moreover, because Plaintiff has failed to submit any significant probative evidence, he has satisfied neither the subjective nor objective element necessary to prove Defendant Gibson violated his constitutional rights by the use of excessive force. *See Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994); *Hudson v. McMillan*, 503 U.S. 1, 6 (1992). Accordingly, Plaintiff has failed to state a cognizable claim against Defendant Gibson for excessive use of force.

12

## A.    Excessive Force Claim—Application of Leg Irons

Plaintiff's amended complaint,[14] signed under penalty of perjury, alleges that:

On the date of April 14, 2005, Plaintiff was brutally and illegally assaulted while restrained in handcuffs, black box security box, and full security waist chain, at the direction of Steve Cantrell, by Kenny Knight, Larry Brown, Roger Brown, and Richard Williams ("Williams") while Defendants J. Harbin, Teddy Basler, Derek Daugherty, Anita Garrett, and A. Stanley, Steve Cantrell and officer John Doe stood by and watched and failed to intervene on Plaintiff's behalf. This denied Plaintiff the right to be free of any cruel and unusual punishment. Roger Brown and Larry Brown[,] who were holding the plaintiff down[,] both saw the above officers actions, and refuse [sic] to try to stop these officers actions, or come to the plaintiff's aid. This also can constitute cruel and unusual punishment.

On the date of April 14, 2005, after being seen by medical staff[,] Plaintiff was brutally and roughly jerked from the medical examination table by Robert Gibson, Jr., and forced to walk a long distance down hill on a sprained right ankle. Robert Gibson, Jr. and Derek Daugherty forced the plaintiff to walk on a sprained right ankle and if plaintiff refused to walk he was dragged. . . .Once plaintiff got to the transportation bus Robert Gibson, Jr., tried to look as though he was aiding the plaintiff on the bus, but actually tripped the plaintiff and caused the restraints on plaintiff's ankles to tighten, and plaintiff's right ankle to swell more.

(Court File No. 33, p. 4).

A review of the complete record before the Court reflects that Plaintiff is actually arguing that because the order to kneel for application of the leg irons was not required by the Commissioner of the Department of Corrections Living Conditions for Segregated Inmates, the order was illegal and thus any force used by Defendants to enforce the order was excessive and unconstitutional.

---

[14]    An amended complaint replaces all prior complaints. *B & H Medical, L.L.C. v. ABP Admin., Inc.,* 526 F.3d 257, 268 n. 8 (6th Cir. 2008) (explaining that a prior complaint becomes a nullity when an amended complaint is filed because an amended complaint supercedes all prior complaints). Plaintiff was so advised in the Court's previous Order, which required him to redraft his complaint and notified him that his amended complaint would replace all previous complaints and amendments in the case [Court File No. 29, p. 3].

(Court File Nos. 222-1; 223; 225-1).

Defendants deny Plaintiff was assaulted, thus necessarily denying any Defendant witnessed an assault on Plaintiff and failed to protect him from an assault. Defendants contend that, after Plaintiff refused numerous direct orders to kneel for the application of leg irons, he was advised physical force would be applied. According to Defendants, because Plaintiff remained braced to the door with one or both feet, they used the least amount of force necessary to get Plaintiff to the floor and apply the leg irons. Defendants also deny any constitutional violation.

### 1.     Defendants Motion for Summary Judgment

Defendants have filed a motion for summary judgment supported by affidavits from Defendants R. Brown, Cantrell, and Gibson. In addition, they have filed contact notes generated when the incident occurred, pictures of Plaintiff and Defendant Knight's injured shin, Accident/Incident/Traumatic injury reports reflecting the injuries Plaintiff and three of the Defendants received as the result of this incident, the April 14, 2005 After Action Report, incident reports, inmate grievance documents and the Response of Supervisor, letters from Plaintiff, classification documents, and disciplinary documents (Court File Nos. 216-1 thru 216-11).

### a.     Defendant R. Brown's Affidavit

Defendant R. Brown avers, in his affidavit, that the NECX chain bus arrived at the High Security Annex to pick up Plaintiff at approximately 11:10 on April 14, 2005, and the following sequence of events occurred. Plaintiff was waiting in the visiting gallery. When the chain drivers arrived, the NECX officers secured Plaintiff with a waist chain, black box, and cuffs. Defendant R. Brown asked Plaintiff to kneel so leg irons could be applied. Plaintiff refused to kneel and, likewise refused each subsequent request to kneel. Defendant R. Brown notified Defendant Cantrell of the

14

standoff and he came to the visiting gallery to assess the situation. When they approached Plaintiff, he was sitting on the stool on the inmate side of the visiting gallery with both feet on either side of the door.[15] Defendant Cantrell warned Plaintiff he was issuing his final order for him to kneel for the application of leg irons and, if he refused, physical force would be applied. Plaintiff refused to obey the order and Defendant Cantrell ordered the officers "to use minimal force necessary" to get Plaintiff to the floor so the leg irons could be applied (Court File No. 216-1, p. 3). Defendants R. Brown, Williams, L. Brown, and Knight opened the door and urged Plaintiff to voluntarily kneel but he remained steadfastly stayed to the door with both feet. Defendants then used the least amount of force necessary to get Plaintiff to the floor. Plaintiff was not cooperative, but was not combative either. He was placed on the floor and Defendant Daughtery applied the leg irons. Plaintiff was taken to see the medical staff. As a result of the forced application of the leg irons, Plaintiff suffered an injury to his ankle, Defendant R. Brown twisted his right middle finger, Defendant Williams twisted his right knee, and Defendant Knight had an abrasion on his right knee (Court File No. 216-1).

### b. *Defendant Cantrell's Affidavit*

Defendant Cantrell's affidavit states the Tennessee Department of Correction ("TDOC") policy requires all maximum security inmates to wear leg irons while moving around the prison and that specific post orders for the maximum security unit, authorized by Warden Jim Worthington, provided, prior to opening an inmate's cell door for movement, the inmate was to kneel inside his cell at the door, facing away from the door. Once the door was opened, the officer would apply the

---

[15] There is a minor discrepancy in the affidavits of Defendant R. Brown and Defendant Cantrell as to whether Plaintiff had one or both feet on the door frame. This discrepancy, however, is inconsequential to the Court's analysis of this excessive force claim.

leg irons before the inmate stood. (Court File No. 216-2, pp. 1-3).

When Defendant Cantrell arrived at the visiting gallery, Plaintiff was sitting on a stool on the inmate side of the visiting gallery with his right foot propped up on the inside of the door frame. Being well aware of Plaintiff's history of violence against staff members and other inmates, and having previously received notice from Plaintiff he would no longer kneel to have leg irons applied, Defendant Cantrell issued three direct orders to Plaintiff to kneel for the application of leg irons. Plaintiff refused all orders and stated he "would kneel for no man." Defendant Cantrell then ordered the Defendants to use the necessary minimal force needed to place Plaintiff on floor and apply leg irons (Court File No. 216-2, pp. 2-3).

According to Defendant Cantrell, Defendants made a last and equally unsuccessful effort to get Plaintiff to kneel voluntarily, but he remained braced to the door with his right foot, so the officers forced Plaintiff out of the small visiting room and onto the floor of the hallway. Plaintiff was neither cooperative or combative. Officer Daughtery applied the leg irons. Defendant Cantrell avers the force used was the least amount of force necessary to restrain a maximum security inmate for transportation and that the use of force, which he contends could have easily been avoided had Plaintiff followed the rules, was executed in a professional manner in accordance with all TDOC policies and procedures, and Post Orders (Court File No. 216-2, pp. 3-4).

Defendant Cantrell explains when physical force is applied to an inmate, prison policy requires the inmate to be immediately taken to the clinic or triage to be evaluated. Five officers carried Plaintiff to the medical triage room, two on either side of Plaintiff and one to support and protect his head while he was being carried. There was no investigation as to the use of force, given the lack of any indication that force was used unnecessarily or was undertaken in an abusive manner.

An "After Action Report," which is part of the record, was generated, along with a picture of Plaintiff and Defendant Knight's injured shin (Court File No. 216-2, pp. 4-5).

Finally, Defendant Cantrell states medical staff checked Plaintiff's ankle (the only injury he reported) and, after the examination was completed, a restrained Plaintiff tried to get off the examination table. Defendant Gibson responded by taking hold of Plaintiff's arm to steady him. Once Plaintiff was stable on his feet, Defendant Gibson released his arm. Plaintiff walked under his own power with Defendant Gibson close behind (Court File No. 216-2, pp. 5-6).

Defendants' have advanced a legitimate good faith use of physical force in pursuit of the valid institutional goal of protecting staff and inmates. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (discussing good faith use of physical force). Thus, Plaintiff must raise a genuine issue of material fact that the force used was unreasonable, thus excessive, under the circumstances.

### 2. *Plaintiff's Opposition to Summary Judgment*

Although Plaintiff has submitted a response and supporting memorandum in opposition to Defendants' summary judgment motion, along with several exhibits and affidavits, those documents fail to provide sufficient facts to support his claims of excessive force (Court File Nos. 222, 222-1, 222-2; 224; and 225). It is important to note the only documents made under oath submitted by Plaintiff which contains any facts to support his allegations, other than his amended complaint, are two affidavits from two inmate witnesses. Plaintiff has submitted two personal affidavits but neither provide facts to support his allegations.

In one affidavit Plaintiff avers he has stated claims upon which relief can be granted; there are genuine issues of material facts; Defendants took an oath not to ill-treat any inmate; there was an eyewitness who saw and heard the assaults on Plaintiff; policy requires he should have been

17

issued a disciplinary infraction for a rule violation; the Commissioner's Living Conditions for Segregated inmates does not require inmates to kneel for leg restraints; the RMSI medical report conflicts with the BMCC Medical Report and that the former clearly shows Plaintiff suffered a serious injury and received pain medication; a medical report shows he was allowed to keep his pain medication on his person; Defendant Gibson had a very serious motive for repeatedly assaulting him; and many other allegations that fail to provide factual support for his excessive force claims (Court File Nos. 222-1, 222-2).

### a. *Grasty Affidavit*

In addition to some other documents,[16] Plaintiff also relies upon the affidavit of Nikia K. Grasty, an inmate who avers he observed this incident while waiting for transportation to a Special Needs facility. Mr. Grasty asserts Plaintiff arrived at the visiting room and was put in handcuffs and

---

[16]    Plaintiff has submitted the following documents: a Tennessee statute (Court File No. 225-1, Exhibit 1); prison procedures (Court File No. 225-1, Exhibit 3-5); a RMSI medical report reflecting his foot was twisted, he had pain, he was ambulating, had a sprained ankle, and "nurse to give Motrin (Court File No. 225-1, Exhibit 6); a medical report from BMCX-BM reflecting meds are KOP ["Keep on person"] (Court File No. 225-1, Exhibit 7); a letter he wrote to Commissioner Campbell (Court File No. 225-1, Exhibit 8); ten-year old correspondence from Representative Harold E. Ford, Jr. which indicates Plaintiff was complaining about employee impropriety (Court File No. 225-2); a copy of *McGowan v. Gibson*, 2002 WL 554468 (Tenn.Ct.App. April 15, 2002)—a state case filed by Plaintiff in 2000 against Defendant Gibson which was remanded to the trial court for further proceedings, and which Plaintiff failed to reveal was subsequently dismissed for his failure to comply with Tenn.Code Ann. § 41-21-805, in that he failed to disclose, in his affidavit, his litigation history and to pay court costs from some previous suits dismissed as frivolous(Court File No. 225-2, Exhibit 13); Defendant Gibson's Interrogatories and Requests for Admissions (Court File No. 225-3, Exhibit 19-20); Plaintiff's affidavit averring that while he was sitting on the transportation bus on April 21, 2005, at the Morgan County Regional Complex (now Brushy-Morgan Site) he heard Defendant Gibson instruct Defendant Stanley to say Plaintiff resisted or refused to be restrained so force was necessary and his ankle was injured when he fell on or twisted it (Court File No. 225-3, Exhibit 21); and correspondence indicating he has attempted to pursue criminal prosecution of Brushy Mountain Correctional Complex officials (Court File No. 225-3, Exhibits 23-25)

a waist chain and told to get down on his knees for leg irons. Plaintiff turned his back for application of the leg irons but was told to get on his knees. Plaintiff did not refuse to be restrained but did refuse to kneel. Defendant Cantrell instructed the officers to "grab [Plaintiff] and put him on the floor." (Court File No. 225-1). Further, Mr. Grasty avers "[Defendant] Knight had [Plaintiff's] right foot twisting it like he was trying to break it, [Defendant] Daugherty had [Plaintiff's] left foot just holding it. [Defendant] Williams was pushing [Plaintiff's] head into the floor repeatedly. [Defendant] Knight was holding [Plaintiff's] foot in the air the entire time trying to hurt [Plaintiff]."

Lastly, Mr. Grasty states that, upon returning from the Special Needs Facility, Defendant Knight was escorting him to his laundry job and asked him whether Defendant Knight had been good to him and straight with him. Mr. Grasty agreed that Defendant Knight had been both good to him and straight with him. Defendant Knight then stated he did not understand why Mr. Grasty would testify against him to which Mr. Grasty responded he did not know what he was talking about, but if Defendant Knight was wrong then he was wrong (Court File No. 225-1).

### b.     *Eads Affidavit*

Plaintiff has also submitted an affidavit from inmate Mitchell Eads stating he was in the sally-port area of the Morgan County Regional Correctional Facility (a.k.a. Brushy Mountain Correctional Complex Site #2) on April 21, 2005, and after being escorted to a van by Defendant Gibson and Defendant Stanley he observed the two having a conversation through the open side door of the van and heard Defendant Gibson say "Well Hell! Just tell'em he fell and twisted the thing." Inmate Eads states he has "strong reason to believe that [Defendant] Gibson and [Defendant] Stanley were referring to Plaintiff's ankle because prior to and during the comment, Defendant

19

Stanley nodded her head directly toward Plaintiff while she whispered to Defendant Gibson who pointed to Plaintiff's ankle" (Court File No. 225-3, Exhibit 22).

3. *Applicable Law*

Under the Eighth Amendment, the use of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). However, not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id.* (citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id.* at 834, (i.e., whether the force was "harmful enough" to establish a constitutional violation). Though plaintiff need not prove significant injury, *see Hudson*, 503 U.S. at 8-10 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury), he must show more than a *de minimis* one to satisfy this element of his claim. *Id.* at 8-9 (finding that Eighth Amendment allows minimal uses of physical force which are not "repugnant to the conscience of mankind") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The subjective inquiry is focused on whether the defendants possessed a culpable state of mind. In the context of excessive force, the question is one of defendants' intent—whether defendants' used force in a good faith effort to restore order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 320.

20

4.       *Discussion*

Under the summary judgment standard, once Defendants' affidavits and evidence establish they used only the amount of force necessary to apply the leg irons to Plaintiff, the burden shifts to Plaintiff to rebut their evidence with admissible verified evidence they used excessive force. *Celotex Corp. v. Catrett*, 477 U.S. at 322. Thus, Plaintiff needs to produce evidence the force was "harmful enough to establish a constitutional violation" and applied "maliciously and sadistically to cause harm" rather than in a "good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. at 7-8. The factors that are relevant to this determination include "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted[.] . . . From such consideration inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks and citations omitted). When evaluating an Eighth Amendment excessive force claim against prison officials, the Court keeps in mind that "prison administrators are charged with the responsibility of ensuring the safety of prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Thus, in evaluating the use of force under such circumstances and determining "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. at 320-21 (quoting *Johnson v. Glick*, 481

21

F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973).

As explained below, none of Plaintiff's submissions provides the necessary factual support to demonstrate a genuine issue of material fact exists. Plaintiff has failed to support his opposition to Defendant's Summary Judgment motion as required by Rule 56(e) of the Federal Rules of Civil Procedure requirement that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Rule 56(e). Consequently, Plaintiff has not submitted any evidence that supports an inference of wantonness in the infliction of pain or that Defendants acted maliciously with the intent to harm him. Therefore, Defendants are entitled to summary judgment.

The objective component of an Eighth Amendment claim of cruel and unusual punishment based on a claim of excessive force focuses on the effect of the Defendants' conduct. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2nd Cir. 2000). Objectively, Plaintiff must establish that the use of force reached constitutional dimensions. A *de minimis* use of force will rarely suffice to state a constitutional claim, however, a plaintiff is not required to show the application of force resulted in any serious injury. *Hudson*, 503 U.S. at 8. Rather, the key inquiry under *Hudson* and its precedents is whether the alleged conduct involved "unnecessary and wanton infliction of pain." *Id.*

In their motion for summary judgment, Defendants have demonstrated that the use of force was reasonable under the circumstances. The affidavits supporting Defendants' summary judgment motion reflect that McGowan refused several requests to kneel to have leg restraints applied and

stated that "he would kneel for no man." (Court File No. 216-2, p. 3).[17] Although Plaintiff was restrained in handcuffs, a black box, and security chain, it was necessary to place leg irons on him because he was a high security inmate who was being moved. Likewise, the Post Orders, as well as his long history of violence and insubordination in prison made it necessary to require Plaintiff to kneel for the application of the leg irons. Given that Plaintiff refused numerous requests to kneel for application of the leg irons and Defendants forced an uncooperative Plaintiff on the ground and applied the leg irons, Defendants have demonstrated they used only that amount of force necessary to place Plaintiff in a prone position and apply the leg irons. The record, which includes Defendants' uncontested affidavits, clearly demonstrates the force was reasonable in this case. Due to Plaintiff's violent history and prior violence against staff, the officer's safety would have been compromised had he bent down to apply the leg irons while Plaintiff was standing, as this would have made him vulnerable to an assault by Plaintiff.

Likewise, laying Plaintiff in a prone position on the ground; holding his head and body to the floor; and twisting his leg to place it in the leg iron was not unreasonable force. Thus, since

---

[17]     According to Stephen Cantrell's affidavit,

> Pursuant to TDOC policy, all maximum security inmates must have let irons on while moving around the prison. This policy is in place to protect staff and other inmates from violence. Further, the post orders that were currently in effect for the maximum security unit and signed off on by Warden Jim Worthington stipulated that prior to opening an inmate's cell door for movement, the inmate was to kneel inside his room at the door, but facing away from the door. Once the door was opened, the Correctional Officer was to apply leg irons prior to the inmate's standing to his feet. Inmate McGowan had complied with this procedure in preparation for being taken to the visiting gallery on April 14, 2005, and had knelt again upon hi s arrival in the visiting gallery for the leg restraints to be removed. This is because the transportation officers use their own leg restraints.

(Court File No. 216-2, p. 3).

Defendants' have advanced a legitimate good faith use of physical force in pursuit of the valid institutional goal of protecting staff and inmates, *see Parrish v. Johnson*, 800 F.2d at 604 (discussing good faith use of physical force), the burden shifts to Plaintiff to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. at 324.

Plaintiff must raise a genuine issue of material fact the force used was unreasonable, thus excessive, under the circumstances. In an effort to glean whatever evidentiary support exists for Plaintiff's allegations, the Court has carefully reviewed the complete file, including Plaintiff's verified complaint, all unverified allegations submitted by Plaintiff, and his opposition to summary judgment, including affidavits and other documents he filed in support of his opposition. In none of these does Plaintiff go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). His broad, conclusive statements are insufficient, and missing facts will not be presumed. *See Lugan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). As explained below, there simply is no factual support indicating the Defendants brutally assaulted Plaintiff or they used any more force than necessary to apply the leg irons to Plaintiff.

First, it is important to note Plaintiff's amended complaint and all documents submitted by him reflects he is actually arguing that, because "the Commissioner of the Department of Correction has not signed and approved of the practice of making inmates get on their knees for application of leg shackles or leg restraints[,]" he was not required to kneel for application of the leg restraints, thus, his refusal of the order to kneel did not justify any use of force to apply the leg irons because "force '**can not**' be used against a prisoner who has refused an unlawful order." (Court File No.

223, pp. 3, 8).   However, "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest."  *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008)(citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (failure to follow prison procedure before placing inmate in four-point restraints was not unconstitutional )).   If Plaintiff's true argument is that, since the policy was not approved by the TDOC Commissioner, any amount of force used to make him kneel for application of the leg restraints was unconstitutional, that argument is flawed.   No constitutional right is implicated merely because the Post Orders had not been approved or signed by the TDOC Commissioner.   "Process is not an end in itself.   Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  *Olim*, 461 U.S. at 250. Moreover, regardless of any policy, in view of Plaintiff's past violent tendencies, it was necessary for the Defendants to require him to kneel to prevent him from kicking the officer in the face or committing some other type of assault while the officer was applying the leg irons.

Grasty's affidavit does not undermine this conclusion.   The actions asserted in that document— that Defendant Knight had Plaintiff's right foot, holding it in the air, "twisting it" and that other officers were pushing Plaintiff's head into the floor repeatedly—are entirely consistent with the application of reasonable force to apply leg irons to a noncompliant inmate and do not require an inference the force was unnecessary or unreasonable.   Holding the Plaintiff's foot in the air and twisting it while trying to apply leg irons is consistent with the fastening of leg irons on a noncompliant party.   Keeping Plaintiffs head held to the floor to immobilize him during the application process likewise is consistent with attaching leg irons to a noncompliant inmate.[18]

_____

[18]      Mr. Grasty's assertion that Defendant Knight was twisting the leg as though he "was trying to break [Plaintiff's ankle]" must be discounted. S*ee Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991)("Affidavits composed of hearsay and opinion evidence do not satisfy

Significantly, Plaintiff does not dispute Defendants assertions he was braced to the door with either one or both feet; they had to grab him by the arm; pull him to his feet, through the door, into the hallway; and force him to lie face-down on the floor before applying the leg irons (Court File Nos. 216-1,p. 3; 216-2, p. 11). Likewise, Plaintiff does not dispute Defendants' averments that the least amount of forced was used to apply the restraints or contradict their version of the events surrounding this incident.

The evidence involving the injury sustained by Plaintiff is at odds with someone trying to break his ankle or repeatedly pushing his head in the floor. Although Plaintiff contends he was slammed on the floor, his face was pushed into the floor, and he was brutally assaulted, the proof before the Court, which includes the medical reports, demonstrates he sustained no injury to his head, his face, or any other part of his body (other than a *de minimis* injury to his right ankle) and never complained of any such injury. Thus, this bald statement by Plaintiff is insufficient to raise a genuine issue of material fact.[19]

One final matter remains for discussion. While the Sixth Circuit broadly construed Plaintiff's allegation he was brutally assaulted as stating a claim, at this point in the proceedings

---

Rule 56(e) and must be disregarded." (internal quotation marks and citation omitted)),

[19]     Although the requisite physical injury need not be serious, it must be more than *de minimis*. Plaintiff's allegations, however, establish no more than a *de minimis* physical injury; an injury that did not required any medical treatment after the initial evaluation by either BMCC or RMSI. *See Jarriett v. Wilson*, 162 Fed.Appx. 394, 400-01 (6th Cir. 2005) (unpublished), *available in* 2005 WL 3839415 (claims that leg became swollen like a grapefruit and severe cramps in thighs was *de minimis*); *Scott v. Churchill*, No. 97-2061, 2000 WL 519148 at *3 (6th Cir. April 6, 2000) (unpublished decision) ("prisoner must allege that he sustained more than *de minimis* injury in order to state a viable excessive force claim"); *Thaddeus-X v. Wozniak*, No. 99-1720, 2000 WL 712383 at *3 (6th Cir. May 23, 2000) (unpublished decision) (a prisoner bringing an Eighth Amendment claim for physical injury "must show that he suffered more than *de minimis* injury").

where summary judgment is being sought, more than bare allegations are required. Plaintiff's bald allegation of a "brutal assault" loses its significance when viewed against the summary judgment record as a whole. *Stone v. University of Md. Medical Sys. Corp.,* 855 F.2d 167, 176 (4th Cir. 1988) (finding that bald statements of a non-moving party in affidavits or depositions do not demonstrate genuine disputes of fact). In the absence of proof of a genuine issue of material fact concerning whether the force was excessive and whether it was applied in a good-faith effort to maintain discipline, not to maliciously cause pain, Defendants are entitled to and will be **GRANTED** summary judgment on this claim.[20]

## B. Failure to Protect

The law is clear that "correctional officer[s] who observe[] an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). In order to survive a summary judgment motion for

---

[20] Plaintiff not only failed to allege Defendants acted maliciously, he also failed to provide any evidence of a malicious intent on the part of any Defendant to harm him. The subjective component of an Eighth Amendment claim of cruel and unusual punishment based on a claim of excessive force focuses on the Defendants' motive for the challenged conduct. Subjectively, Plaintiff must demonstrate Defendants acted maliciously with the intent to harm him. *Hudson*, 503 U.S. at 7. The core inquiry with respect to the subjective element of an Eighth Amendment claim, is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. To determine whether Defendants acted maliciously, the Court considers several factors, all of which, in this case, weigh in favor of Defendants' lack of malicious subjective intent: (1) the extent of Plaintiff's injuries, which are minimal under the circumstances of this case; (2) the need for the application of force, which was necessary in this case because Plaintiff refused a direct order which was made for the safety of staff and other inmates; (3) the correlation between the need for force and the amount of force used, which the evidence demonstrates was no more than necessary to put Plaintiff in a prone position and apply the leg irons; and (4) any efforts made by Defendants to temper the severity of a forceful response, which the evidence demonstrates Plaintiff was immediately seen by medical personnel. *See Whitley v. Albers*, 475 U.S. 321 (1986). Plaintiff has failed to proffer any evidence that is sufficiently adequate to allow a reasonable trier of fact to conclude Defendants acted with a malicious intent to harm Plaintiff.

an Eighth Amendment "failure to protect" claim, plaintiff must allege facts sufficient for a reasonable jury to infer that defendants were deliberately indifferent when they had actual knowledge of a substantial risk of serious harm to plaintiff. *See Farmer v. Brennan*, 511 U.S. at 842.

To prevail on a "failure to protect" claim, Plaintiff must show: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Plaintiff has not established that the actions of Defendants Knight, L. Brown, R. Brown, and Williams in taking him down and applying the leg restraints constituted excessive force. Therefore, his claim against Defendants Harbin, Basler, Daugherty, Garrett, Stanley, and Cantrell for failure to intervene and protect him from the alleged assault also fails.


## V.      Conclusion

For the above stated reasons, Plaintiff has not offered sufficient evidence to permit a reasonable jury to find in his favor. The injuries of which Plaintiff complains are relatively minor, and none of the Defendants' behavior suggests an intent to harm Plaintiff. Accordingly, the evidence Plaintiff has adduced is insufficient to meet the strict standard of cruel and unusual punishment under the Eighth Amendment.

Because Plaintiff has failed to set forth any facts in support of his claims, and alternatively, failed to establish any constitutional violations, his complaint (Court File No. 33) will be **DISMISSED** for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983. In addition, the motion for Summary Judgment will be **GRANTED** (Court File No. 213).

An order will enter.

28

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

29